J-S01021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :           PENNSYLVANIA
  :
v.   :
  :
  :
  :
CODY LEE CHESTNUT   :
  :
Appellant   :   No. 640 MDA 2021

Appeal from the PCRA Order Entered May 18, 2021
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000994-2017

BEFORE:   BOWES, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:         **FILED FEBRUARY 25, 2022**

Appellant Cody Lee Chestnut appeals from the order denying relief for his timely first Post Conviction Relief Act[1] (PCRA) petition. Appellant contends that his trial counsel was ineffective for failing to call certain character witnesses. We affirm.

A previous panel of this Court summarized the underlying facts of this matter as follows:

> On March 22, 2017, Appellant went to the home of Dennis Chestnut [(the victim)], Appellant's father, to get high. The two went to the barn on the property and took a hit of crack cocaine, which [the victim] described as being of "garbage" quality. The two then "rode out on [a] skid-steer" to access some logs.[fn1] They loaded logs into the bucket and returned to the barn. Both Appellant and [the victim] took another hit of the crack cocaine,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

and Appellant told [the victim] that Appellant needed money. [The victim] called a log buyer, but that individual was not available to buy logs at that time, and according to [the victim], Appellant became upset. At that point, while [the victim] had his back turned to Appellant, Appellant struck [the victim], who "went flying." According to [the victim], it was the "[h]ardest punch he ever took." [The victim] then "staggered out of the barn door," and Appellant "drug [sic] [the victim] back [inside the barn] by [his] hooded sweatshirt." At that point, [the victim] felt injuries to his "face and eye." Appellant then attacked [the victim] again and "grabbed [him] by the throat and started choking [him]." [The victim] recalled being on his hands and knees and feeling Appellant punch his spine and stomp on his back. Eventually, Appellant permitted [the victim] to call his girlfriend, Patti, for help. [The victim] also "agreed to lie" to both Patti and police about what happened to help Appellant avoid criminal charges.

[fn1] [The victim] testified that he was a tree trimmer by trade.

Patti arrived at the barn, and while Appellant was helping [the victim] into her vehicle, Appellant requested that Patti "stop at the [MAC] machine and get him 300 [dollars]." By the time [the victim] arrived at a local hospital, his eye was swollen shut and bleeding, and he had "a lot of pain in [his back] where [Appellant] broke [his] ribs." Hospital personnel were concerned that [the victim] was "going to lose that eye," and [the victim] was transferred by ambulance to a larger hospital in Danville, Pennsylvania.

According to Dr. DiAnne Leonard, a trauma surgeon who treated [the victim] in Danville, [the victim] arrived at the hospital with "evidence of traumatic injuries around the face." After some imaging studies, it was revealed that [the victim] had "multiple facial fractures around the left eye," "nasal bone fractures," two rib fractures, a "grade three liver laceration," and "an intimal tear in his aorta." [The victim] was admitted to the hospital for close monitoring of his internal injuries.

Trooper Jonathan Thompson of the Pennsylvania State Police made contact with [the victim] the following morning while [the victim] was still hospitalized in the intensive care unit. Trooper Thompson photographed [the victim's] injuries. [The victim] also provided a three-minute video statement to Trooper Thompson implicating Appellant as his attacker. Trooper Thompson also

- 2 -

went to [the victim's] property to process the crime scene. Then, Trooper Thompson procured a warrant for Appellant's arrest, and Appellant was apprehended at the home of his girlfriend later that evening.

Police interviewed Appellant, who admitted that he and [the victim] had a fight the day before. Appellant explained to police that he had seen [the victim] earlier that day, and [the victim] "could provide [Appellant] with an opportunity to make some money to help him out." The two smoked crack together, then "they got into a fight." Appellant admitted to hitting [the victim] once, then stated that [the victim] hit Appellant, then Appellant hit [the victim] two or three more times. Appellant also told police that he "put [the victim] in a guillotine choke."[fn6]

> [fn6] At trial, [Appellant asserted he acted in self-defense.] Appellant testified that he "snapped [his] hand offensively" at [the victim] to push [the victim] away after [the victim] became combative and agitated after smoking the crack cocaine. According to Appellant, the two began to "tussle" and they "ended up on the ground." Appellant testified that things calmed down until it appeared to Appellant that [the victim] was going to hit Appellant with a brick. At that point, according to Appellant, [the victim] tackled Appellant, and Appellant tried to calm [the victim] down by hitting him in the back and side.

As a result of this incident, Appellant was charged with aggravated assault, simple assault, strangulation, and unlawful restraint.

*Commonwealth v. Chestnut*, 1800 MDA 2018, 2019 WL 3916647, at *1-2 (Pa. Super. filed Aug. 19, 2019) (unpublished mem.) (citations and some footnotes omitted), *appeal denied*, 223 A.3d 1288 (Pa. 2020).

At trial, Appellant was represented by Ryan Gardner, Esq. (trial counsel). The defense called two character witnesses, both of whom knew Appellant and the victim. Jamie Moore testified that the victim had a reputation in the community for untruthfulness. N.T. Trial, 4/11/18, at 6, 8. Moore also testified that she knew the victim had a reputation for being

violent. *Id.* at 9, 12. Tiffany Sellers testified that the victim had a reputation in the community for being untruthful, describing him as a "known liar." *Id.* at 15. Both Moore and Sellers testified that they knew Appellant to be a non-violent person. *Id.* at 7, 15-16.

After a two-day jury trial, Appellant was convicted of aggravated assault and simple assault.[2] On June 18, 2018, the trial court sentenced Appellant to an aggregate term of five to twelve years' incarceration. After the trial court denied Appellant's post-sentence motion, Appellant filed a direct appeal. This Court affirmed Appellant's judgment of sentence on August 19, 2019, and our Supreme Court declined further review on February 26, 2020. *Chestnut*, 2019 WL 3916647 at *5, *appeal denied*, 223 A.3d 1288 (Pa. 2020).

Appellant filed a timely *pro se* PCRA petition on March 11, 2020. The PCRA court appointed Trisha Hoover Jasper, Esq. as counsel for Appellant, and she filed an amended PCRA petition on Appellant's behalf. Therein, Appellant argued that trial counsel was ineffective for failing to call certain character witnesses who had been subpoenaed for the trial, but ultimately did not testify. Am. PCRA Pet., 9/25/20, at 3-5.

The PCRA court held an evidentiary hearing on December 22, 2020. At the hearing, Appellant presented the testimony of six witnesses: Danielle Giardano, Shane Nearhoof, Demsey Long, Deborah Parks, Ruth King, and

---

[2] The jury acquitted Appellant of strangulation and unlawful restraint. N.T. Trial, 4/11/18, at 89.

Alexandra Reese. N.T. PCRA Hr'g, 12/22/20, at 3, 11, 21, 29, 33, 38. Each of these witnesses stated that they had received a subpoena to testify at Appellant's trial and were available to testify, but that trial counsel did not call them as witnesses. *Id.* at 4, 12, 22, 29, 33, 38-39. The witnesses also stated that if they had been called at Appellant's trial, they would have testified that they knew Appellant to be a truthful and/or a non-violent person. *Id.* at 5, 13-14, 23-24, 30, 34-35, 39. The witnesses further testified that the victim was a dishonest and violent person. *Id.* at 6-8, 15-17, 25-26, 30-31, 35-36, 39. Nearhoof, King, and Reese specifically testified that the victim had a reputation in the community for being violent. *Id.* at 17, 36, 40-42. Appellant did not call trial counsel as a witness; therefore, trial counsel did not testify at the evidentiary hearing.

On May 18, 2021, the PCRA court issued an opinion and order denying Appellant's petition. *See* PCRA Ct. Op. & Order, 5/18/21, at 12. Appellant filed a timely notice of appeal. The PCRA court did not order Appellant to comply with Pa.R.A.P. 1925(b), but filed a Rule 1925(a) opinion adopting its May 18, 2021 opinion and order. *See* PCRA Ct. Op., 8/13/21, at 1.

Appellant raises the following issue on appeal: "Whether the [PCRA] court erred in determining trial counsel was not ineffective for failing to call additional character witnesses at trial?" Appellant's Brief at 6 (formatting altered).

Specifically, Appellant reiterates that trial counsel should have called the six individuals who testified at the PCRA evidentiary hearing as character

witnesses during his trial. *Id.* at 16-23. Appellant contends that these witnesses would have provided non-cumulative testimony concerning the victim's violent character. *Id.* at 21-22. Appellant also claims that although Moore and Sellers testified at trial, their testimony was insufficient to establish the victim's reputation for dishonesty or violence. *Id.* Further, Appellant argues that trial counsel's "testimony was not necessary to show he had no reasonable basis not to call the witnesses when each witness testified they were subpoenaed and appeared to trial to testify." *Id.* at 22. Appellant concludes that the testimony of these witnesses could have changed the outcome of the trial because each witness had different information to present to the jury. *Id.*

This Court has explained that

> our standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citations omitted and formatting altered).

> Furthermore, to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors

- 6 -

and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

* * *

Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

*Id.* at 1043-44 (citations omitted and formatting altered).

To prove that counsel was ineffective for failing to call a particular witness, the petitioner must establish:

(1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on [the] appellant's behalf; and (5) that the absence of the testimony prejudiced [the] appellant.

Thus, trial counsel will not be found ineffective for failing to investigate or call a witness unless there is some showing by the appellant that the witness's testimony would have been helpful to the defense. A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy.

*Commonwealth v. Michaud*, 70 A.3d 862, 867-68 (Pa. Super. 2013) (citations omitted and formatting altered).

"Whenever an evidentiary hearing on a claim of ineffectiveness is granted, the burdens of production and persuasion remain on the [PCRA petitioner]." *Commonwealth v. Jones*, 596 A.2d 885, 888 (Pa. Super. 1991) (citation omitted). Therefore, in order to prove that counsel lacked a reasonable basis for his actions, a petitioner must produce trial counsel as a witness at the PCRA hearing and elicit testimony concerning counsel's trial

strategy. **See id.** at 888-89 (rejecting an ineffectiveness claim where the petitioner failed to produce trial counsel as a witness at the PCRA hearing); **see also Commonwealth v. Lesko**, 15 A.3d 345, 401 (Pa. 2011) (finding that because the petitioner "did not establish any ground for deeming counsel *per se* ineffective," and did not establish a lack of reasonable basis through trial counsel's testimony at the PCRA hearing, he failed to sustain his burden of proof); **Commonwealth v. Koehler**, 36 A.3d 121, 146-47 (Pa. 2012) (same).

Further, this Court has held that "a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion." **Commonwealth v. Reyes-Rodriguez**, 111 A.3d 775, 783 (Pa. Super. 2015) (*en banc*) (citation and footnote omitted, formatting altered). Additionally,

> our Supreme Court has cautioned against finding no reasonable basis for trial counsel's actions in the absence of supporting evidence. The fact that an appellate court, reviewing a cold trial record, cannot prognosticate a reasonable basis for a particular failure . . . does not necessarily prove that an objectively reasonable basis was lacking.

**Id.** at 783-84 (citations and quotation marks omitted).

Here, the PCRA court addressed the reasonable basis prong as follows:

> In this case, there was no testimony whatsoever as to why [trial] counsel chose not to call the additional character witnesses. During the trial, [Appellant] called two character witnesses. These character witnesses were called to bolster the testimony of [Appellant] that the victim was lying. The testimony also bolstered [Appellant's] claim that the incident involving the victim was in self-defense.

*    *    *

The [PCRA] court never heard from trial counsel as to why he did not call the other witnesses. While they may have been present, able and willing to testify, [trial] counsel chose not to call them. Without hearing from trial counsel under the circumstances, the [PCRA] court cannot conclude that the course of conduct pursued by counsel did not have some reasonable basis designed to effectuate [Appellant's] interests. Accordingly, [Appellant's] claim fails in this regard.

PCRA Ct. Op. & Order at 8-9.

Our review of the record confirms that Appellant did not call trial counsel as a witness at the PCRA hearing to elicit testimony about his trial strategy. As noted previously, the decision on whether to call witnesses is a matter of trial strategy, and the failure to call a witness is not *per se* ineffective assistance of counsel. *See Michaud*, 70 A.3d at 868. Therefore, because Appellant failed to present any evidence with respect to the reasonable basis prong of the ineffectiveness test, his claim must fail. *See Koehler*, 36 A.3d at 146-47; *Jones*, 596 A.2d at 888-89. Likewise, we discern no error of law in the PCRA court's conclusion that in the absence of any evidence, it could not conclude that trial counsel lacked a reasonable basis for his actions. *See Reyes-Rodriguez*, 111 A.3d at 783-84. Therefore, Appellant is not entitled to relief. *See Sandusky*, 203 A.3d at 1044 (the failure to prove one prong of ineffectiveness test requires a rejection of the ineffectiveness claim). For these reasons, we affirm the trial court's order denying relief under the PCRA.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/25/2022